UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-61520-Civ-COOKE/HUNT

DIANNE CO,

    Plaintiff,

v.

FIRSTSERVICE RESIDENTIAL
FLORIDA, INC.,

    Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant, FIRSTSERVICE RESIDENTIAL FLORIDA, INC. (hereinafter, "FirstService"), by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby moves this court for summary judgment on all of Plaintiff, DIANNE CO's (hereinafter "Plaintiff") claims. FirstService respectfully submits that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. The grounds for this motion are set forth fully in the following Memorandum of Law:

**I.  Introduction**

This lawsuit arises out of claims brought forth under the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"). Plaintiff's Complaint [DE 1] alleges that FirstService violated the FDCPA, 15 U.S.C. § 1692 *et seq.* and the FCCPA, Fla. Stat. § 559.55 *et seq.* by demanding payment of maintenance fees that had allegedly already been paid.

Moreover, Plaintiff alleges that FirstService actively ignored Plaintiff's proof of payment and charged late fees and collection expenses on the payment Plaintiff allegedly already made.

FirstService contends that it did not violate either the FDCPA or the FCCPA and further asserts that Plaintiff has not suffered any damages as all late fees were waived once Plaintiff's payment was processed.

## II. Memorandum of Law in Support of Summary Judgment

### A. The Summary Judgment Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for the motion" and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has established the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and by his own "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

2

at 324. The non-moving party must rely on more than conclusory statements of allegations unsupported by facts. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

As the question presented by this litigation is almost exclusively a question of law, there are no genuine disputes of material fact and the matter can appropriately be decided on summary judgment.

B. **FirstService did not Violate the FDCPA**

Congress passed the FDCPA to protect consumers from debt collectors' abusive debt collection practices. *See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367* (11th Cir. 1998). The FDCPA prohibits harassing or deceptive conduct in the collection of a debt. *See* 15 U.S.C. § 1692(d) and (e). The FDCPA states, in part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *See* 15 U.S.C. § 1692(f). Moreover, in order to prevail on a FDCPA claim, a plaintiff must prove that: (1) it has been the object of collection activity arising from consumer debt; (2) the defendant is a debtor collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Kaplan Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360-61 (S.D. Fla. 2000), *quoting, Sibley v. Firstcollect, Inc.*, 913 F.Supp. 469, 470 (M.D. La. 1995).

Plaintiff has alleged violations of 15 U.S.C. § 1692(d)[1] and (e).[2] There are no facts to support Plaintiff's allegations. Nonetheless, when determining whether the FDCPA has been

---

[1] A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
**(1)** The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
**(2)** The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

**(3)** The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) [604(a)(3)] of this Act [15 USCS § 1681a(f) or 1681b(a)(3)].
**(4)** The advertisement for sale of any debt to coerce payment of the debt.
**(5)** Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
**(6)** Except as provided in section 804 [15 USCS § 1692b], the placement of telephone calls without meaningful disclosure of the caller's identity.

[2] A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
**(1)** The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
**(2)** The false representation of--
**(A)** the character, amount, or legal status of any debt; or
**(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
**(3)** The false representation or implication that any individual is an attorney or that any communication is from an attorney.
**(4)** The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
**(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.
**(6)** The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--
**(A)** lose any claim or defense to payment of the debt; or
**(B)** become subject to any practice prohibited by this title [15 USCS §§ 1692 et seq.].
**(7)** The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.
**(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
**(9)** The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.
**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
**(11)** The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information

violated, the Court usually applies an objective test focused on how the least sophisticated consumer would be affected by Defendant's collection practices. *Rivera v. Amalgamated Debt Collection Services, Inc.*, 462 F.Supp.2d 1223, 1227(S.D.Fla., 2006). Under this standard, there are no facts demonstrating that FirstService engaged in an act or omission that is harassing, oppressive, abusive, or deceptive.

Furthermore, in the Eleventh Circuit, "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes [her] relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). The court in *Valle v. National Recovery Agency*, No. 8:10-cv-2775-T-23MAP, 2012 U.S. Dist. LEXIS 69564, 2012 WL 1831156, at * 1 (M.D. Fla. May 18, 2012), listed several factors used to assess whether a violation of § 1692d occurred.

> Factors often examined in assessing a claimed violation of Section 1692d and Section 1692d(5) include (1) the volume and frequency of attempts to contact the debtor, (2) the volume and frequency of contacts with the debtor, (3) the duration of the debt collector's attempted communication and collection, (4) the debt collector's use of abusive language, (5) the medium of the debt collector's communication, (6) the debtor's disputing the debt or the amount due, (7) the debtor's demanding a cessation of the communication, (8) the debt collector's leaving a message, (9) the

---

obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
**(12)** The false representation or implication that accounts have been turned over to innocent purchasers for value.
**(13)** The false representation or implication that documents are legal process.
**(14)** The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.
**(15)** The false representation or implication that documents are not legal process forms or do not require action by the consumer.
**(16)** The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act [15 USCS § 1681a(f)].

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

5

> debt collector's calling at an unreasonable hour, (10) the debt collector's calling the debtor at work, (11) the debt collector's threatening the debtor, (12) the debt collector's lying to the debtor, (13) the debt collector's impersonating an attorney or a public official, (14) the debt collector's contacting a friend, co-worker, employee, employer, or family member, and (15) the debt collector's simulating or threatening legal process.

*Id.*

In applying the facts of the instant action to each of the above factors, FirstService used a minimally intrusive means of communication. As it relates to the first two factors set forth in *Valle*, during the time period where the alleged violations were occurring, FirstService only sent Plaintiff two (2) notices immediately after quarterly maintenance fees were due on January 31, 2018, and April 30, 2018. *See Exhibit B and Exhibit E*. In regards to the third factor, correspondences between Plaintiff and FirstService transpired over a span of seven (7) months; February 12, 2018 through August 8, 2018. *See Exhibits C, D, F, and I*. During these seven (7) months FirstService only sent correspondences to Plaintiff through email after she inquired about the status of her account and through two (2) reminder notices. *See Id. and Exhibits B and E*.

As it relates to the fourth factor of *Valle*, the correspondences sent to Plaintiff were not abusive or threatening as the majority of the correspondences were FirstService explaining that the Money Order was lost and that Plaintiff had to request a replacement Money Order from Western Union. *See Exhibits C, D, E, F, and Exhibit I*. For the fifth factor, Plaintiff specifically notes that she would reach out to FirstService and would document everything that transpired through email. *Exhibit G at [9:1] – [9-17]*. At Plaintiff's deposition she specifically stated:

> Q. Okay. Now, what did you do once you received [the late payment notice]?
>
> A. I notified Barry Rosenthal to inquire why I received this and why I have late payment.

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

6

> Q. And do you recall Barry's response to it?
>
> A. Initially he was going to wait for a few days to see if it came in, you know, and he was going to research with some other department, I don't know. So I didn't wait for him to call me, I notified him because I got this notice and I know from what type of people I'm dealing with, so that's what happened.
>
> Q. After you spoke to Barry, how long do you think it was until the next communication happened?
>
> A. I sent him an email. After I speak to him I always document everything. With these people you always document so you have evidence of what actually transpired.

*Exhibit G at [9:1] – [9:17].*

In regards to the sixth factor, Plaintiff did not dispute that she owed the maintenance assessments, but rather, she disputed that she already sent payment for the debt. *See Exhibits C, D, F, and I.* However, while Plaintiff's payment was lost, Plaintiff refused to replace the lost Money Order. *See Exhibit F.* At no point did Plaintiff demand the cessation of the communication. In fact, Plaintiff initiated conversations with FirstService regarding the lost Money Order. *See Plaintiff's Deposition [9:1] – [9:17].* Furthermore, at no point did FirstService leave any messages, call Plaintiff at an unreasonable hour, or call Plaintiff at work. *See Exhibit G.* Moreover, FirstService did not threaten Plaintiff in any way, nor did FirstService lie about the outstanding amounts due for Plaintiff's maintenance assessments. *See Exhibits B, C, D, E, F, G, I, and J.* In fact, upon learning of the outstanding amounts on Plaintiff's account, FirstService requested that a researcher attempt identify if the Money Order could be located. *See Exhibit C.*

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

7

Additionally, FirstService did not impersonate an attorney or public official nor did FirstService contact a friend, co-worker, employee, employer, or family member regarding the outstanding maintenance assessments. Finally, at no point did FirstService contact an attorney to commence any collections proceedings and at no point did it harass Plaintiff regarding any debt she may have owed; Plaintiff was merely sent reminder notices which are automatically generated when a there is an outstanding amount in the system. *See Exhibit J at [44:3] – [45:9]*.

### C. FirstService did not Violate the FCCPA

Plaintiff has made claims under §§ 559.72(7) and (9) of the FCCPA. However, as shown below, Plaintiff's FCCPA claims also fail as a matter of law. Section 559.72(7) of the Florida Statutes provides as follows:

> Prohibited practices generally.—In collecting consumer debts, no person shall:
>
> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family ...

A claim under § 559.72(7) of the FCCPA "does not require a specific frequency of calls—it only requires that the frequency, tone, and purpose of the calls be enough to constitute harassment." *Sprogis v. Suntrust Bank*, 6:13-CV-365-ORL-37, 2013 U.S. Dist. LEXIS 79713, 2013 WL 2456090, at *1 (M.D. Fla. June 6, 2013) (citing *Story v. J.M. Fields, Inc.*, 343 So.2d 675, 676-77 (Fla. 1st DCA 1977)).

Furthermore, Fla. Stat. § 559.72(9) states as follows:

> Prohibited practices generally.—In collecting consumer debts, no person shall:

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

8

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

To establish a violation under § 559.72(9) Fla. Stat., "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Bentley v. Bank of Am., N.A*, 773 F. Supp. 2d 1367, 1372-73 (S.D.Fla., 2011).

Plaintiff contends that FirstService violated §§ 559.72(7) and (9) of the FCCPA by refusing to credit her account even though her money order had been lost and payment had never actually been received by FirstService. FirstService's initial communications with Plaintiff had been to remind her that payment had not been received. *See Exhibit B.* Plaintiff then informed FirstService that she had mailed a Money Order. *See Exhibit C.* When it was determined that the Money Order could not be located, FirstService requested that Plaintiff obtain a replacement Money Order as FirstService could not do so as this could only be done by Plaintiff. *See Exhibit F*. FirstService also agreed to reimburse Plaintiff for any expense incurred in obtaining a replacement money order and also agreed to waive all late payments once a replacement money order was received. *Id.* However, Plaintiff refused to obtain a replacement money order and to this date the original money order remains outstanding. *Id.*

The FCCPA requires proof that the debt collector knowingly claimed, threatened or attempted to collect illegitimate debts. *Williams v. Streeps Music Co.*, Inc., 333 So. 2d 65, 67 (Fla. 4th DCA 1976) (finding that the FCCPA requires actual knowledge on the part of the debt collector). Even if the debt collector should have known that a debt was not legitimate, a plaintiff cannot maintain a claim under the FCCPA unless the plaintiff can establish that the debt collector actually knew that the debt was illegitimate. *Id*. To prevail on her claim that

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

9

FirstService violated the FCCPA, Plaintiff must present evidence that FirstService claimed, attempted or threatened to enforce a debt that it knew was not legitimate or that FirstService asserted the existence of some other legal right when FirstService knew the right did not exist. Fla. Stat. § 559.72(9).  It is clear from the facts that FirstService did not knowingly claim, threaten, or attempt to collect on an illegitimate debt.  Plaintiff's account reflected an outstanding balance due to a lost Money Order.  By all accounts, FirstService sent its reminder notices based on the fact that the Money Order could not be located.

It is the Plaintiff's contention that since she mailed in the payment and the payment was allegedly received, she is no longer responsible for the lost check and that FirstService must credit her account. However, Plaintiff's position is not supported by Florida law. Specifically, Fla. Stat. Section 673.3091 details the enforcement of lost, destroyed, or stolen instruments including checks and money orders. Under this statutory provision, FirstService, on behalf of the master association, may seek to enforce the now-lost money order under the following circumstances:

> **(1)** A person not in possession of an instrument is entitled to enforce the instrument if:
>
> **(a)** The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
>
> **(b)** The loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> **(c)** The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

10

Fla. Stat. § 673.3091.

The undisputed facts conclusively establish that: (1) First Service was entitled to enforce Plaintiff's money order, on behalf of the Towngate, at the time that the money order was lost; (2) The loss of the money order was not the result of a transfer by FirstService or a lawful seizure by a third-party; and (3) FirstService cannot reasonably obtain possession of the money order because its whereabouts cannot be determined. *See Exhibits B, C, D, E, F, G, I, and J*. There was no reason for FirstService to believe that the debts were illegitimate, as such, the debts enforceable by FirstService pursuant to Fla. Stat. Section 673.3091.

Furthermore, Plaintiff claims that FirstService misapplied the payments she made on May 25, 2018. *See Exhibit G at [27:4] – [27:6]*. However, regardless of Plaintiff's claims that she requested the payments be applied to a certain month, Fla. Stat. Section 718.116 specifies that, "Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney fees incurred in collection, and then to the delinquent assessment." Additionally, Towngate's Declaration of Covenants Restrictions and Easements Section 7.01, reiterates Fla. Stat. Section 718.116:

> Any payments made to the Master Association by any Owner shall first be applied towards any sums advanced and paid by the Master Association for taxes and payment on account of superior mortgagees, liens, or encumbrances which may have been advanced by the master Association in order to preserve and protect its lien; next toward reasonable attorneys' fees and costs incurred by the Master Association incidental to the collection of Assessments and other monies owed to the Master Association by the owner for the enforcement of its lien; next towards interest and late charges on any Assessments or other monies due to the Master Association, as provided herein, and next **towards any unpaid Assessments owed to the Master Association in inverse order that such Assessments were due.**

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

11

(emphasis added) *See Section 7.01 of the Declaration of Covenants, Restrictions and Easements for Towngate at Pembroke Pines attached hereto as Exhibit K*. Under these circumstances, the actions taken by FirstService, particularly with regard to crediting Ms. Co's payments to the past due amounts were lawful.

Based on the foregoing facts, it is clear that at no point did FirstService violate the FCCPA in any way, and FirstService's Motion for Summary Judgment should be granted as to Plaintiff's claims relating to any alleged violation under the FCCPA.

### III. Conclusion

FirstService did not violate either the FDCPA or the FCCPA. This lawsuit is nothing more than Plaintiff's attempt to assert that because her money order was lost, she has no obligation to replace it and that FirstService must credit her account and assume her debt, which is not what the FDCPA or the FCCPA ever contemplated. Furthermore, FirstService is entitled to summary judgment on all of Plaintiff's claims. For the reasons set forth above, FirstService asks this court to grant this motion and render a final summary judgment in FirstService's favor.

Dated: October 29, 2018

Respectfully Submitted,

/s/ Ronnie Guillen

RONNIE GUILLEN, ESQ.
Florida Bar No. 842001
Guillen.r@wssllp.com
ILAN A. KAIRY, ESQ.
Florida Bar No. 120561
Kairy.i@wssllp.com
WINGET, SPADAFORA &
SCHWARTZBERG, LLP
14 NE 1st Avenue
Suite 600

Miami, Florida 33132
Telephone: (305) 830-0600
Facsimile: (305) 830-0601
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on October 29, 2018, on all counsel or parties of record on the Service List below:

By:  /s/ Ronnie Guillen

RONNIE GUILLEN, ESQ.

## SERVICE LIST

Max Story, Esq.
Florida Bar No.: 0522738
Austin J. Griffin, Esq.
Florida Bar no. 0117740
MAX HUNTER STORY, P.A.
328 2nd Avenue North
Jacksonville Beach, Florida 32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
austin@storylawgroup.com
*Attorneys for Plaintiff*

WINGET SPADAFORA SCHWARTZBERG LLP
14 NE 1ST AVENUE, • SUITE 600 • MIAMI, FLORIDA 33132
TELEPHONE (305) 830-0600 • FACSIMILE (305) 830-0601

13